IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH AvisAllianceCapitalLLC@gmail.com THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE, INC. | Case No. |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION FOR SEARCH WARRANT**

I, Jeffrey Weeks, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises controlled by Google, Inc. ("Google") an e-mail provider headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.  I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since April 2005.  I am currently assigned to a complex financial crimes squad at the Washington Field Office of the FBI in Manassas, Virginia.  My involvement in this investigation has included interviewing victims and other witnesses, reviewing financial and other records provided by numerous financial institutions and other entities, and reviewing reports of

interviews prepared by other law enforcement agents involved in this investigation. I have also reviewed numerous e-mails sent to or from accounts belonging to James Pierce ("Pierce"), who as described below was charged by indictment in *United States v. James Pierce* (D.D.C. Case No. 18-CR-230) on July 31, 2018.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1349 (conspiracy to commit wire fraud) have been committed by Pierce and Keaven Williams ("Williams"). There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes further described in Attachment B.

5. Keaven Williams ("Williams") is a resident of New Jersey. Williams has represented that he is affiliated with an entity named Avis Alliance Capital, LLC ("Avis Alliance Capital"). As set forth below, Williams has communicated with a victim of a fraud scheme using the e-mail account AvisAllianceCapitalLLC@gmail.com (the "Target Account").

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). As discussed more fully in the

attached Exhibits, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C.  See U.S.C. § 3237.

**PROBABLE CAUSE**

7. On July 26, 2018, Magistrate Judge Deborah A. Robinson issued an arrest warrant for Pierce pursuant to a Complaint charging him with conspiracy to commit wire fraud under 18 U.S.C. § 371.  The FBI arrested Pierce that day.  The Complaint was supported by a Complaint Affidavit, which was sworn to by FBI Special Agent Gregory S. Fine (the "Fine Affidavit"). The Fine Affidavit is being submitted in connection with the instant application as Exhibit A, and is incorporated by reference herein.

8. On July 31, 2018, a grand jury in the District of Columbia returned a three count Indictment charging Pierce with one count of conspiracy to commit wire fraud under 18 U.S.C. § 1349 and two counts of wire fraud under 18 U.S.C. § 1343.  The Indictment is submitted in connection with the instant application as Exhibit B, and is incorporated by reference herein.

9. In summary, the Indictment (and the Complaint) allege that from at least in or about February 2011 and continuing until at least in or about October 2013, Pierce, together with his co-conspirators, defrauded victims by telling them that, in exchange for an upfront payment, the co-conspirators would arrange for a bank in the Dominican Republic ("Bank 1") to issue SWIFT messages showing that the victims had access to funds on deposit at Bank 1.  As part of their pitch and at Pierce's direction, the co-conspirators represented that they had access to funds at Bank 1.  In fact, the co-conspirators neither controlled accounts at Bank 1 nor had the ability to cause Bank 1 to issue the SWIFT messages they promised to the victims.  Instead, Pierce and his co-conspirators provided victims with fake SWIFT messages that purported to show that Bank 1 had issued SWIFT messages as promised.  After the victims confronted Pierce and his

co-conspirators, who had failed to follow through on their promises, they offered a number of excuses and false statements, including that Bank 1 had in fact sent the SWIFT messages and that the receiving banks had confirmed their receipt. Pierce and his co-conspirators also attempted to discourage the victims from contacting Bank 1 directly, in order to conceal the conspiracy.

Williams Transactions

10.     The FBI's investigation has revealed evidence that since the time period of the conduct charged in the Indictment (February 2011 – October 2013), Pierce has participated in fraudulent SWIFT message transactions with Williams. The FBI has spoken to Victim D, who paid a total of $45,000 to obtain a purported Standby Letter of Credit (SBLC) from Bank 2 in late 2016 and early 2017 pursuant to an agreement with Avis Alliance Capital (Williams' entity). Williams corresponded by e-mail with Victim D using the Target Account.

11.     Victim D stated to the FBI that she first came into contact with Williams in December 2016. Williams represented to Victim D that in exchange for Victim D paying a deposit, Williams would cause Bank 2 to issue an SBLC in the amount of several million dollars, which Bank 2 would transmit via SWIFT message to a receiving bank. Victim D could then access a line of credit that the receiving bank would issue based on the SBLC. After Victim D paid $15,000 to the escrow attorney for the transaction, on December 30, 2016, Williams sent Victim D an e-mail using the Target Account that appeared to relate to a delay in the issuance of the purported SBLC. Williams later provided Victim D with documents from Bank 2 that purported to show that Bank 2 had transmitted Victim D's SBLC to the receiving bank. Victim D stated that in reality, the receiving bank never received the SBLC.

12. After the failure of the first transaction, Williams represented that he could have Bank 2 re-issue the SBLC to a different receiving bank in exchange for an additional payment. Using the Target Account, Williams sent bank account information for an entity controlled by Pierce to Victim D by e-mail on January 23, 2017. At the request of Williams, Victim D then made a second payment of $30,000 directly to Pierce's bank account. Also using the Target Account, on January 24, 2017, Williams e-mailed draft language for the "re-issued" SBLC to Williams. The draft language included that the SBLC would be in the amount of "3,000,000.00 (THREE MILLION DOLLARS) IN THE LAWFUL CURRENCY (*sic*) THE UNITED STATES OF AMERICA." After making her second payment to Pierce, Victim D received a purported e-mail from Bank 2, in which Bank 2 appeared to request more information to process Victim D's transaction. Victim D forwarded this e-mail to Williams at the Target Account. Victim D also responded to the e-mail, but received an error message that the recipient's e-mail address was not valid.

13. A private investigator working for Victim D later contacted Bank 2 to inquire about the transactions, and Bank 2 confirmed that documents relating to them were not legitimate. After repeated attempts to contact Pierce, Victim D finally received a refund of her second payment of $30,000 from Pierce after contacting the FBI in September 2017. Victim D also received a partial refund of her initial payment of $15,000 from the escrow agent for the transaction. Victim D stated that neither of the two designated receiving banks ever received an SBLC.

14. Bank records obtained in the FBI's investigation show that Pierce and Williams have engaged in transactions since then as well. Most recently, an account controlled by Pierce received a wire transfer of $70,000 on June 25, 2018 from what appears to be the account of an

escrow attorney in connection with a transaction involving Williams. The next day, June 26, 2018, Pierce then transferred $10,000 to a bank account in the name of Avis Alliance Capital (Williams' entity).

15.     I sent a preservation request to Google for the Target Account on August 24, 2018. In general, an e-mail that is sent to a Google subscriber is stored in the subscriber's "mail box" on Google servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on Google servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to be available on Google servers for a certain period of time.

## BACKGROUND CONCERNING E-MAIL

16.     In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("email") access, to the public. Google allows subscribers to obtain email accounts at the domain name gmail.com, like the email account listed in Attachment A. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

17.      A Google subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google. In my training and

experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

18. In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

19. In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

20.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

21.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline

information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## **CONCLUSION**

22.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

                              Respectfully submitted,

                              Jeffrey Weeks
                              Special Agent
                              Federal Bureau of Investigation

Subscribed and sworn to before me
on August 30, 2018:

_____
HON. G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

This warrant applies to information associated with:

AvisAllianceCapitalLLC@gmail.com that is stored at premises controlled by Google, Inc. ("Google"), a company that accepts service of legal process at 1600 Amphitheatre Parkway, Mountain View, CA, 94043.

## ATTACHMENT B

### Particular Things to be Seized

I.   **Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on August 24, 2018, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

1. The contents of all emails associated with the account **from July 1, 2016 through the Present**, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

2. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

3. The types of service utilized;

4. All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files; and

5. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken. The Provider is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

**II.     Information to be seized by the government**

All information described above in Section I that constitutes evidence and instrumentalities of violations of 18 U.S.C. §§ 1343 and 1349, those violations involving Keaven Williams and/or James Pierce and occurring after July 1, 2016, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) information relating to fraudulent transactions in which victims are provided with purported bank documentation in exchange for payment;

(b) information relating to purported SWIFT messages that are represented as transmitting bank documentation to victims;

(c) any information related to participants in the purported transactions (including names, addresses, phone numbers, e-mail addresses, or any other identifying information);

(d) any information related to victims of the purported transactions (including names, addresses, phone numbers, e-mail addresses, or any other identifying information);

(e) all bank records, wire transfer records, payment records, checks, credit card bills, account information, and other financial records relating to the purported transactions;

(f) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(g) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(h) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).